Your Honor, this case is Medoc 2-15-0172. The IL Svs. Co, Petitioner Appellant, the IL Environmental Protection Agency, et al. Respondents and Beliefs. Cardinal on behalf of the Petitioner Appellant, Attorney Mr. Peter DeBruin. Cardinal on behalf of the Respondents and Beliefs, Attorney Mr. Frank Esack. Mr. DeBruin. Good morning, Your Honors. Good morning. I would like to just, I know you've read the briefs and you know the facts, but I'd like to point out three, for perspective purposes, three piles of material that were on the premises of Northern Illinois Service Company on the day that we got the citation. There's one pile of 10,000 to 15,000 tons, and that pile is recyclable material. It's asphalt and it's concrete with iron embedded in it. You said tires were embedded in that? Not tires. It's asphalt and then it's rebar. It's concrete with rebar embedded in it. So it's highway material. It's highway material, that's correct. And then Northern takes that material, puts it through its machine and turns it into metal on one side and stone on the other side and it resells it. So this is an environmentally sound thing. You don't have to put it in the dump. It's clean. Everything is fine. Second pile of material are the supplies Northern uses, and those are concrete, concrete blocks that it uses in pipes when it builds piping for drainage systems. It has wire mesh. It has lumber for formboards for pouring concrete, other metal items. It has a special use permit to store these outside. So these are there, perfectly legal. The third pile is what we were cited for, and this pile consists of basically the same type of material, and what this pile is is sort of the used up part of the pile I just talked about. So this pile consisted of pallets upon which supplies arrived at Northern, and those supplies can arrive either at its site or on job sites. Lumber formboards. It recently poured concrete on its sites, so it had a plastic covering that it put over the concrete to dry the concrete, and other items that had been used in its projects, but what that pile did not include was any debris from buildings that had been destroyed or pavement that had been broken up. So how did these materials get there and where did they go? Well, the recyclable material, that's brought in from third parties and then sold, and then it's sold again. It's bought by Northern and then sold again, and Northern brings some of its material that it's demolished, it puts it into that pile for recycling. The materials it uses, it buys, and the materials in the pile, it brings from its construction site where it's used up or from the pallets it takes supplies in at its site. Now, where does that pile go? Well, that pile, on a regular basis, is taken to the dump. In the year before we were sited, on three occasions, the records show and the testimony is consistent, not contradicted, that material is put down in a pile, and when it gets to be about a truckload, which is about 20 tons… How long does it take to get a truckload? It depends, because it depends upon when they're working. If they have an opportunity, they'll take material to the dump. But when the dump, sometimes they'll work after the dump is closed, and then they have to take maybe a little bit of that material back to the site. So it all depends upon how much work they have, etc. But when they get about a pile's worth, which they've placed down… When they get a pile's worth, don't you mean when they get a truckload's worth? A truckload's worth, that's right. Yeah, about a truckload's worth. Then they will take that material to the dump. So they do take material to the dump from the job sites, but these odds and ends or pallets that are delivered to the shop, they put on its site. There's nothing in the law that says you have to put it in a container. In any event… Well, the question is, when does it become a disposal site, correct? Isn't that one of the issues here? I think that's exactly the issue, Your Honor. So going to that, because we're… Allegedly, we openly dumped waste resulting in litter. And so when you go to open dumping, open dumping has in its definition, disposal. And then you go to the disposal definition, and it says it's not disposal if you have a plan, a certain plan to dispose of it elsewhere. Well, wait. There's a law that says, or regulation that says that if you have a plan to dispose of it elsewhere, no matter when that plan may take place, their plan could be to dispose of it in 20 years elsewhere. It's still not a disposal site, correct? Is that what you're arguing? No, I'm not arguing that. I'm looking at that, the same thing you're looking at. And I'm saying there's no fakery here. I mean, I think that there's some… When you read that regulation, and the inspector comes by and looks, and the inspector should ask a question, what are you going to do with it? Because then you get into all of these odd situations where people want to have a bright line. I think the law itself is good. Do you have a plan to dispose of it elsewhere? For example, in the Aberdeen case, which we cited, the person who owned the property, he told the worker to lay the stuff out behind the barn. And the worker did it. Case went up to the PCV, and the board said, there is no litter here. There is no discarding, because the person said he had an intent to take it to the dump. Well, no, the holding in that case was that it wasn't a disposal site, because it was burned the exact same day it was dumped out there. Was the stuff dumped there that same day? Well, I think in that case they said there was no litter, because there was no discarding. It says, in other words, the person may not place waste directly into containers as long as the waste is disposed of properly before the area where it is stacked becomes a disposal site. And I'm reading from the Aberdeen case. Yes. So in Aberdeen, since they cleaned out the barn, put it in the back, and then burned it that same day, it hadn't become a disposal site. The issue in that case was really what the knowledge was of the respondent, correct? Well... The knowledge of the burning, I should say. Yes, that's correct. But I think you're putting your finger on it, because it's the question of going back to the definition of disposal. Do you have a plan, and so that's an open dumping disposal, and then resulting of waste, and waste and litter both have the word discarding or abandonment, which is sort of the other side of, do you have a plan? Obviously, discarding something, you don't have a plan. So they sort of fit together. So in these cases, for example, in the Gonzalez case, the board commented, we're not going to call this open dumping, because we don't know how long this tanker has been there. So they want to know how long it's been there. So the practical question is this. If I'm working, I'm putting in a backyard deck, and I put down a piece of wood, and I'm going to, it's extra wood, and I say I'll take it to the dump tomorrow, and I do take it to the dump tomorrow, and then I come home at night, I work on my deck, and then there's another piece of extra wood. The inspector comes by and says, hey, there's a piece of wood there. You say, well, I have a plan I'm putting in my deck. Well, is that a plan or isn't it? I think you have to take it on a case-by-case basis. But if you see that there is a regular plan of taking things to the dump, and you can go to all sorts of examples, like somebody building a tree house for their child, backyard deck, building a house. How often does Ms. Shaheen appear to make inspections? She, about, I think about 75% of her time at that time was pre-scheduled inspections. 25% were unannounced. Well, the question I tried to ask was, what's the time frame between her first and second visit, the time frame between her second, third, and so on and so forth? So I can get an idea of how many times she's been there in a year, say, or has she been, did she make inspections every 30 days, did she make it every 60, every 90, every 180, do you know? Yeah, she was, I think she was there three or four times. She was there in December 2011, and then she came back in March 2012. That's roughly four months? Well, two months. Can you recalibrate mine? Yeah, but what she had seen in December, she gave us a citation, there's a pile. My guess is it was the same type of thing, we're ready to take it to the dump. We took that to the dump, the record shows, on February 8, 2012. Then she comes back again in March 14, she says, there's a pile. Yeah, there was a pile there, we're going to take that to the dump, too. If she kept coming at odd times, she would see that we put this stuff together. As I say, we're not trying to hide anything, we put it on a concrete pad in a pile, and we're saying we're going to take that to the dump. When they were cited for the first pile, why wouldn't the company get a dumpster or something to separate this out so it's not laying on the ground, so when she does come back in two months, four months, six months, there's not another pile there that she's cited it for already? Well, that's probably a good question, but the law, there's no requirement that you put materials in a container. When does it become a disposal site? What is the time cutoff? Is 16 months too long to leave a pile on the ground? Yes. But I thought one of the, your exhibit four or five showed that there was one time frame of 16 months, I thought, between when the loads were taken to the dump. Well, but there may have been nothing, I think I mentioned this in my brief, there may have been nothing to collect. In other words, there can be a long period of time where we don't have stuff on the ground because we've taken it directly to the dump. So the regular basis, it's not like we're throwing a banana peel in there every day. When we don't have any jobs, there's probably not going to be anything in the pile. So they occur sporadically. So when you get to, as I was correct, when you get to a butter truckload, then that's when we take it to the dump. So this material in the pile is completely inert. It's just like the other stuff in the pile. And so we think that the Abert case, and if you look at the Gonzalez case, and they're talking about the time period. We don't know how long it's been there. So then you get back into that definition again where you have to apply the definition. Is there a plan to dispose of it elsewhere? And we think under the Abert case we're covered. We think under the law we're covered. Do you understand that the standard on review is manifest way to the evidence? I do. Well, I understand that is the argument when you have a fact issue. Well, you don't think we have a fact issue? I think the material facts are not in dispute in this case. We have material. The record has Ms. Shaheen looking at this pile of material and saying, it looks like construction debris to me. Our witness said, no, I know exactly where that comes from. It's not construction debris. So if there's a dispute there, we still have the issue of open dumping of waste resulting in litter, even if it's construction debris. If we have a regular plan for taking it to a dump, then that is permitted under the law. There's an anecdote about Winston Churchill at a dinner party, and he's sitting next to a woman, and it becomes somewhat intemperate. And he says to her, would you go to bed and sleep with me for a million pounds? And she said, sure, why not? And he said, okay, how about ten pounds? And she said, no, what do you think I am, a common whore? And he said, we've already established that. Now we're bickering about the price. And the point is, is that when you decide that it's going to be one day or 30 days or 60 or 90 or 6 months or 18 months or 20 years, as Justice Burke has suggested, we're now discussing the issue between a million pounds and ten pounds, or between when is this a disposal site and when is it not. The blue brief on page 11 says disposal occurs when either of two circumstances is present. The accumulated waste is not confined or contained to prevent its entry into the environment, or there is no certain plan for the accumulated waste disposal elsewhere. And I haven't heard from you of a certain plan other than when there is a truckload, it gets taken away. Well, the problem with what that relates to is we don't know how long it takes to get a truckload. It could take 20 years. It could take one day. I don't know. And so we have a question of fact here, or at least a question of mixed law in fact, which is when is it deemed to be reasonable as to whether or not the manifest weight establishes that you either are a disposal plant because you don't have a certain plan for removing this. If your clients decided that every 30 days they would remove whatever it was that was there, regardless of the size, I think you probably would be making a much stronger argument to this court. Do you see where I'm coming from at least? I do see where you're coming from. And that's the problem. You're asking us to overturn a decision of an administrative or a governmental agency where the question is manifest weight. And when you say we remove it when there's a truckload, but you don't tell me that it's worked out on average every 30 or 45 or 60 days, and I don't think that's in the record, I don't see you winning. Well, Your Honor, the only thing I can say, and again, to use an example, if you have bananas at home. Look, I empathize, I sympathize, but I take out the garbage once every week, okay? That is a concrete plan. Or there's nothing in the garbage can. And you don't take it out. Yeah, right. Just like we don't take it out. I know. But that's what I... So, like I said, I have some empathy and sympathy. The problem is that the burden on review is much more stringent than you seem to be aware of. Well, I would just say that our certain plan to dispose of it elsewhere is that it doesn't have a time period in it. And if there's a requirement for a time, we're not going to know. Well, I think as Justice Burke indicated, if you put this in a confined or contained area or object to prevent its entry into the environment, or if you had a certain plan, then you wouldn't be in violation. You didn't put it in some sort of containment that I'm aware of. And normally when you talk about a certain plan, you're talking about a time frame. You're not talking about a quantity of things on the ground. It also would seem that maybe if you took pictures of when the last pile was removed and showed it to Ms. Shaheen and said, this is the last pile, and here's a picture of the new pile, can you see the difference between the two piles? Maybe she might come away with the impression that you do have a certain plan. Maybe not. I don't know. But at least the record would be a little bit stronger in your favor. Your Honor, I would only point out in the Ebert case from the way I read it, the only fact in there about Mr. Ebert was I intend to take this to the dump, and that was enough. And he was believed. In this case, your client wasn't. Well, then it really comes to a question of whether somebody has an adequate warning about what the law is. If in one case I intend to take it to the dump and in the other case you have a record of taking stuff to the dump and Mr. Ebert wins and we lose, I don't know where we go. Well, I think you're astute enough to know that each case is essentially sui generis when it comes to credibility. And when you're dealing with manifest weight and you're dealing with deference that's given to the trier of fact, the fact that some other person is believed in a different case doesn't mean that your client has to be believed by the agency in this case. Yes. May I move on? You may. Yes. On the issue of the pile, of course we're saying in that pile we're accused of depositing construction, clean construction or general construction or demolition debris. And, again, we believe the facts show that it was not demolition debris. It was just our material. So we don't think if our first argument doesn't achieve success, that's our second argument. With respect to the tires, the tires are stuff that we use in our business. I think seeing these machines knock down the buildings and seeing tires on flat roofs, that's what we do with them. And we think that the board erred in not using the definition of reused, instead using the word used and ignoring that statutory scheme. Does it make any difference whether it's used, reusable, brand new, whatever, if there's water inside them? I think it does because we have all sorts of equipment. Everybody has all sorts of equipment that collects water. And so if the thing is reused, we're using this equipment all the time. So if you're going to cite us for tires, you might as well cite us for a truck that gathers water or something else that gathers water. This stuff is being put on as spare tires, as bases for power stands, in swinging into buildings, et cetera. So they're on and off. Do they collect water? Yeah, they do collect water, but so do a lot of other things, a lot of other equipment that we use. So this is equipment that we use. It seems like you're arguing a violation of equal protection of your paraphernalia. In other words, it's unreasonable to punish accumulation of water in tires because they haven't punished accumulation of water someplace else. Well, I'm saying that if you look at the definition of reused, it says in place of a commercial product if you're using this. And so our argument is why did the board ignore the definition of reused? In other words, it's saying if you use this product, well, we are using it. It collects water. You're not using it to collect water. We're not using it to collect water. No, we're using it in our business. At the time, the tires were not mounted on a demolition ball or on another tire of a truck or as a light stand. No, they were not. So, again, it gets to your intent to reuse them in the future. Yes, but, again, we have to keep these things as we have to keep them ready when we have that kind of job. If we don't have them ready, we have to go out and buy them. So we have to have them in our inventory to use. Are these truck tires, like semi-truck tires? Some are truck tires, and then we have smaller tires, too. The smaller tires go on the flat roof, too, and then you put plywood over it and the building falls down. The truck tires are the basis for the stands and spares for some of our equipment. When you had that inspection, when your client had that inspection in December of 2011, were there tires noted at that time, or was this more recent as of the March? There were tires noted in December and in March. Same number? No, I don't recall exactly. I think there were fewer tires in March. These specific tires, in the evidence, or I'm sorry, in the record, isn't there evidence that these specific tires were taken to the recycling plant? I think they were, yes. So they weren't actually reused in the future? Well, no. I think what really happened here is when Ms. Shaheen showed up and she said, you've got this or that, we would, I think the client, it's not shown in the record, but we would say, okay, she said, take it to the dump, let's get rid of it. We don't want a problem. So I don't want to read too much into it. I mean, I know, well, why would you take those if you weren't reusing them? And, again, this is outside the record. I think they just cleaned it up and hope she doesn't come back again. So if there are no further questions, your Honor. I don't have any. No. Thank you. You'll have an opportunity. Thank you, Your Honor. Mr. Buziak? May it please the Court? Your name is rather unusual. I don't usually see a name with two Zs in it. It's a very, very Polish last name. But there's a couple of vowels in there. Have you ever seen a Polish name with three Zs? Yes, I think I have. I think Krzyzewski might. I don't know. A Z is a very pliable consonant, I find. But may it please the Court? My name is Frank Buziak and I represent the respondents, the Environmental Protection Agency and the Pollution Control Board. This Court should affirm the Board's decision because its finding that Northern violated the open dumping prohibitions in the Act and allowed water to accumulate in used tires was not against the manifest weight of the evidence. Counsel, can you comment on opposing counsel's comment about the fact that this debris did not contain construction or demolition debris? Sure. The term general construction or demolition debris is statutorily defined as materials which are resulting from construction and demolition activities and then that definition is limited to a list of certain types of objects which include bricks, concrete, masonry materials, soil, rock, wood, non-hazardous painted wood, treated wood. There's a list of different types of objects which fall under that more specific part of the definition. Here the pile consisted of materials which came from both off-site and on-site work projects. It consisted of a number of the specific types of objects which are listed in the definition of general construction or demolition debris and therefore those materials meet the definition because they became waste as a result of their use in these demolition activities and they fell within that more specific portion of the definition which lists types of objects. And although Northern argues that those materials don't qualify as construction or demolition debris because they are not the actual remains of a demolished structure, the legislature in the act did not define the term so narrowly as to only apply to the actual remains of a demolished structure. It could have, but instead it used the more general term resulting from and then later in that statutory definition did use more specific language to identify specific types of objects. Under the scenario that Mr. DeBruin related to this court, is it reasonable to conclude that it is possible that Ms. Shahane could have appeared on a daily basis and issued a citation on a daily basis on the basis that there was no plan and it wasn't in a container or covered? I guess theoretically Ms. Shahane, you know, if she showed up and issued a citation and came back the next day and it was still there and there was still no plan, I guess there could have been multiple subsequent violations. Well, what if she came back the second day and it was gone? She came back the third day and there was a new pile there, so she issued a new ticket. The next day that pile was gone and she came back the next day and there was a new pile there and she issues another ticket. And it would seem that if the appellant is not to be believed, then it would appear that there is no certain plan. And therefore, yeah, they should get ticketed. They should get ticketed every other day because there is no plan. Yes, Your Honor, that could happen if that pattern had developed. But Northern always had the option of breaking that pattern, too, by putting these materials into a dumpster.  Well, the statute defines open dumping as occurring when waste is consolidated at a disposal site. And what's at issue here is whether or not this became a disposal site. And the definition of disposal in the statute is disposal is the act of depositing waste so that some part of it may enter into the environment. Did it enter into the environment here? Well, it's not clear that the materials had entered into the environment yet, but the statutory definition doesn't require evidence that these materials already have entered into the environment because it uses the language may enter into the environment, which serves the legislative purpose of preventing an environmental injury in the first place rather than waiting until after something has happened. So if it's on a concrete slab, which I think it was here, is that going to enter into the environment? It certainly can, Your Honor, because it wasn't contained from the elements, from wind could blow away particulate matter that's contained within that pile. If it rains, that could wash away part of it into the ground. And those sort of different factors and circumstances are the types of things that the board takes into account on a case-by-case basis in determining whether or not a disposal has occurred, which actually further supports why the standard of review in this case is a more deferential standard of review, like the manifest way to the evidence, because whether or not disposal has occurred depends on the specific facts of each case. And the board takes all those into account. And here, where you have a combination of a pile that is not covered or contained, and therefore so wind, rain, all those elements can come into play, and also where there is an extended period of time in which this pile is left outside. So what's an extended period of time? Well, I don't think there's a bright line rule. I mean, I think it depends on the facts of each case. It depends on the contents of what's in the pile, because certain substances are more likely to enter the environment more quickly than others. And to the extent that Northern cites the ABRT PCV case and the EPA versus PCV case, which is from the Fifth District in 1991, for language that, you know, you don't have to put something in a container immediately, in both of those circumstances, the court and the board were addressing the concern that, you know, you might have some situation where you dump something off of a truck onto the ground, but then five minutes later you pick it up and put it into a different truck and take it to a landfill. There's a concern that just maybe that, you know, one minute or five minutes on the ground would constitute a violation of the act. And that's not the case. And so the court and the board were addressing that concern by saying, just because something touches the ground immediately doesn't necessarily mean there's going to be a violation of the act. Does the size of the pile make a difference, if it's one ton as opposed to ten tons? Presumably a larger pile would maybe pose a greater risk of entering the environment more quickly. But there is no language in the statute requiring that a pile be of a certain size or that a certain amount of pollutants be at risk of entering the environment in order to establish a violation. And so here, where you have a pile that the evidence is fairly clear that there wasn't anything covering it, and where you have it sitting out in the elements for an unknown period of time, taking all those factors into account, the board's ultimate conclusion that this constituted open dumping of waste was not against the manifest way of the evidence because it was supported by all those different factors. Does the agency have a frequently asked question link on its website that relates to a time frame for removal of material from property? I don't know, Your Honor. I haven't looked at the website. But, again, the burden that is placed on Northern is not particularly heavy here because Northern could have easily avoided a violation by just putting these materials into a dumpster. They have avoided it by taking a picture and then showing her an invoice that indicated that so many tens of tons were taken. And if this is a picture of the height of the hill and this is the invoice that we paid for between the time of that photograph and the present photograph, it means that something had to be moved off-site? I don't know if that would necessarily establish that there was no violation, but it would make it more likely. It would make it easier for the board to find that there was not one because that would present a certain plan. I mean, here there are, even though the definition in the administrative code is sort of an either-or, it's disposal if there's no covering or if there's no certain plan. So if either one is satisfied, disposal has occurred. I mean, time is kind of a component of both of those to some extent because, you know, back to the earlier concern, I think there is a very legitimate concern that you don't want to create a situation where if you put something on the ground, you know, for five minutes before taking it to a disposal site, that automatically becomes a violation of the act. And I think that's what the language in ABERT and the EPA versus PCB case addresses, that in that situation, the EPA probably wouldn't, you know, issue a citation and the board wouldn't find a violation. Although, in theory, there could be circumstances where the type of substance is, you know, like leaking ooze or something or something that is a type of substance that could enter the environment very quickly. And those are all the sort of different circumstances and considerations that the board takes into account when making its decision. And which is why I think it makes sense that the legislature in Section 41B of the act did set out a specific standard of review, which was the manifest weight of the evidence standard. In Section 41B, the legislature identified three different types of proceedings, which all are reviewed under a manifest weight standard, enforcement actions, permanent appeals, and variance proceedings. And here, this is an enforcement action. And so, therefore, under the plan language of 41B, it should be reviewed under the manifest weight of the evidence standard. And the Supreme Court has recognized the standard in town and country when it applied the manifest weight standard to a citing proceeding, which is a permanent appeal, and then this court applied that same standard in Fox Moraine, citing to town and country. Are there other appeals like this in other districts? Yes, there are. Are you the assistant AG assigned? Not for all of them, just for this one. Why did one pile, a relatively small pile, I would imagine, based on the picture, of debris result in two separate $3,000 fines? Because the pile constituted two separate kinds of waste. You can have separate violations. That's under 21P1 and P7, I think, were the two. There was the one, it constituted litter because it was discarded material that was not properly disposed of. It was discarded because Northern had no intention of using it again. And, you know, the definition of litter also talks about, lists different kinds of objects, glass, metal, plastic and paper containers. Isn't construction debris a type of litter? Wouldn't litter be encompassing the different types of construction debris, or are they absolutely separate things? Well, I think most construction debris probably would fall within the general definition of litter. But, I mean, construction debris is definitely at least a subset in that it lists specific types of objects, whereas litter is more general. It doesn't list specific types. And construction debris has to result from construction or demolition activities. But I think, presumably, something could fall within general construction or demolition debris if it maybe is one of those types of objects that doesn't fall within sort of the more general guidelines of litter. I mean, in the Miller Reverse Pollution Control Board case, it defined litter as material of little value which has not been disposed of. So I think you could have something maybe that's bigger that wouldn't qualify as litter but would qualify as general construction debris. Have you heard the term lesser included? Yes, Your Honor. Why isn't one of these lesser included? Well, because I think the two definitions don't entirely overlap. I mean, I understand that it could sound like general construction or demolition debris is maybe a lesser included form of litter. But the definitions are separate insofar as litter. I think you can have objects that are part of a debris from a construction site that maybe, you know, isn't something that is a little of more value. Well, all Texans are Americans, but not all Americans are Texans. Yes, I understand that. Well, I think the answer is that the General Assembly must have thought that general construction or demolition debris is different than litter. Otherwise, there would have been no reason to create a whole separate definition for that type of waste. Well, to me, litter, my own personal concept based upon years of litter, is things that supposedly are capable of being windblown or moved by nature, whereas debris may be so heavy as that once you place it someplace, it will stay there for a very reasonable long period of time and will not, quote, unquote, blow across the street or whatever. Yes, I agree. I think that that is a common sense distinction between the two. And just because a pile, and just because you're talking about one pile doesn't mean you can't be talking about different kinds of waste. Because the pile can contain multiple things. The pile can contain some objects, which maybe, you know, are those sort of small things which can be blown away, which would constitute litter, while also at the same time containing other larger objects that meet the definition of general construction or demolition debris. Just because it's one pile doesn't mean all the objects within it are the same. And so, unless Your Honor said that. Yeah, I do have one more question. Okay. The section about the tires. Yes. 5 slash 55K1. Yes. No person shall cause or allow water to accumulate in used or waste tires. However, the section doesn't apply if it's a residential household, as long as there's not more than 12 used or waste tires located at that site. So at my own home, I can have 12 tires, junk tires for my car sitting in the backyard. And at Northern Illinois Service Company, they have four tires. And I thought I read two of which had water accumulated in them. Yes. So they've got four tires. And they're cited for having the four tires. And I can have three times that amount. Explain that to me. Well, that's the distinction that the General Assembly drew. And it could be simply a matter of a resident is, I guess, two things. One would be less likely to know of these environmental regulations because a resident is not in the business of engaging in construction or demolition work and wouldn't know they would have to look to the Environmental Protection Act to make sure that he or she was not doing anything unlawful. And also a resident would have, because that resident is not in this type of business, would have less resources. It would be a greater burden, I think, on the resident to ensure that all the tires are being properly stored up. Whereas a business which is constantly using these different tires and which is in the business of doing these types of things, as part of their regular business, it would be less of a burden just to ensure that these tires are stored properly. And those businesses are more likely to have these tires. And so the risk of an environmental injury would be greater. So that might be the reason that the General Assembly gave for that distinction. Do you have any idea how many 18-wheelers Northern Illinois Service Company has? I do not know the exact number. I'm sure they go through a lot of tires at a company like that. Yes, Your Honor. And if Northern intended to reuse them at some point in the future, they're certainly allowed to do so. But what they must do is still store them in such a way, in the meantime, that complies with the Act, put them inside, shake them out, or do, you know, any number of measures which would be sufficient to ensure the whole of them would drain, wouldn't they? I would think so, Your Honor, although I don't know for sure. I'm not a tire expert. But unless Your Honor has had any further questions. Don't you think that's an oxymoron to put a hole in the tire? Well, sometimes they happen unintentionally, too. Thank you. Thank you. Mr. DeBruin. Just very briefly, Your Honors. First of all, the record does show that Mrs. Shaheen, when she came back in March, was given receipts for disposal of the tires and the pile she saw in December. So she knew that the pile had been disposed of, so she had to have known that whatever was there had accumulated, you know, since that time. Of course, she also knew that when she questioned one of the managers about the new pile that she saw, that he said, I told those guys not to throw that on the ground, and they don't listen to me, or something to that effect. Yeah. Yeah. But that was the guy who really didn't have a background in it. And what he was talking about, it wasn't really clear that he knew what it was, whether it was construction debris or whatever they were. You're mentioning what Mrs. Shaheen would have known when she came back. She sees another pile and then is not given an explanation about that pile. She's given a statement that basically, I told them not to do that again. Yeah. I understand, Your Honor. The second thing I'd like to point out, this pile, Attorney Beza said that the EPA takes into account all these facts. Well, this pile basically is wood, stone, and plastic. There's the plastic sheeting. That's the same kind of material that is in the other piles. This is stuff that can't be blown around. It's not litter, as Justice McLaren was pointing out. It can't be blown around. And third, finally, in the ABRT case, page 3 of the ABRT case, this is the board. The board notes, the board cautions Hawkins, that's the inspector, that a person may consolidate waste outside of his barn as long as the site where he consolidates it does not become a disposal site. In other words, a person need not place the waste directly into containers as long as the waste is disposed of properly before the area where it is stacked becomes a disposal site. So the idea that we can get out of this by putting it in a container, that is not relevant to the board. Let me just ask you a quick question. If Northern had just had a memo in a file that says, from Bob to Fred, Fred, when we get up to 20 tons, go dump that, take that to the dump, is that a plan? It's a plan, but I would hope, Your Honor, that that would not win the case for us. I would hope that would not win the case. If it did, I think I'd give up on the practice of law.  Don't give up, sir. There will be a short recess. We have one other case on the call.